# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

October 27, 2025

**BY ECF**

MEMO ENDORSED

Hon. Sidney H. Stein
United States District Judge
Southern District of New York
New York, NY 10007

*[Handwritten endorsement: 11/17/25, Defendant's motion for termination of supervised release is granted. So ordered. [signed] S.H. Stein 5.H.S.D.J.]*

*Re: United States v. George McKelvey, 17 Cr. 511-4 (SHS)*

Dear Judge Stein:

With the support of Mr. McKelvey's supervising probation officer, Robert Harris, I write to request early termination of George McKelvey's supervised release. Mr. McKelvey has completed over two and a half years of his supervised release without issue and has demonstrated that he is an upstanding citizen. In fact, Mr. McKelvey is already set to finish his term of supervised release in late January 2026. In the years since his release, Mr. McKelvey has maintained full-time employment, remained a steadfast father and partner to his family, and complied fully with the terms of his supervised release. Mr. McKelvey's most important success has been reconnecting with his family, including his two children, Zamari and Zameir, as well as his girlfriend, Amiya Moore.

Mr. McKelvey has convincingly demonstrated over the past two and a half years of supervised release that he is dedicated to leading a law-abiding life. He has committed no new crimes and has not sustained a single probation violation. His performance on probation has been so impressive that he was moved to a Low-Intensity Caseload, checking in once every two months with his probation officer, due to his overall compliance. Given Mr. McKelvey's stellar record on supervised release, his probation officer encouraged Mr. McKelvey to contact representation to seek early termination. As such, the defense requests that the Court order early termination of Mr. McKelvey's supervised release.

I.   **Background**

On September 27, 2018, this Court sentenced Mr. McKelvey to 72 months' imprisonment to be followed by three years' supervised release after Mr. McKelvey pleaded guilty to one count of racketeering conspiracy and one count of using and carrying a firearm in relation to a drug trafficking offense. Mr. McKelvey spent his time incarcerated at FCI Petersburg in Petersburg, VA. There, Mr. McKelvey had no disciplinary infractions and worked as a cleaner in and around the facilities. He also voluntarily completed the Residential Drug Abuse Program (RDAP),

1

requiring him to attend every day for six months. In June 2022, Mr. McKelvey transitioned to a halfway house, Brooklyn House, where he completed an OSHA certification. In August 2022, Mr. McKelvey moved from a halfway house to home detention via an ankle monitor. He completed home detention in January 2023. On home detention, Mr. McKelvey found employment, which he has maintained through today. Since January 2023, Mr. McKelvey has been fulfilling his three-year term of supervised release.

Mr. McKelvey is currently being supervised in the Southern District of New York. In correspondence with Mr. McKelvey's Probation Officer, Robert Harris, Mr. Harris has informed us that he supports Mr. McKelvey's application for early termination. Under Mr. McKelvey's current supervision, his Probation Officer visits his house every two months. Mr. McKelvey consistently reports as required, and he has had no violations, incidents, or police contact during his time on supervision. As part of the terms of his supervised release, Mr. McKelvey was also randomly drug tested on five occasions since beginning supervised release in January 2023; he passed all five tests without any issue.

In its Judgment, the Court also ordered Mr. McKelvey to pay a $200 assessment fee, which he paid while incarcerated.

Since his release from BOP custody, Mr. McKelvey has lived in an apartment in the Bronx. He is gainfully employed as a Helper at Action Carting, where he has worked since August 2022. In this role, he cleans, helps the garbage truck collect waste, and sweeps the streets. Mr. McKelvey works between 48- and 60-hour weeks, but he likes his job. His success at work is evident, as he has received three raises since starting at Action Carting in early 2023. He is also in the process of obtaining his CDL license; once he does so, Mr. McKelvey will be able to drive the garbage trucks, a role which brings higher pay and greater responsibility. Through his work, Mr. McKelvey helps keep his streets and his community clean, as well as provides for his family.

Outside of work, Mr. McKelvey enjoys spending as much time with his family as possible. Mr. McKelvey's first child was born shortly before his sentencing, so his children are his first priority. He currently lives with his girlfriend and their children, and they have built a meaningful and involved family life. His older son, Zamari, is eight years old and has a close relationship with his father. Mr. McKelvey and his girlfriend Amiya also had another child, Zameir, last year, so much of Mr. McKelvey's time and attention is dedicated to his children. As a family, they have gone on two vacations, once to the Nickelodeon Resort in Mexico and once to Jamaica. However, these trips and other family activities are made more complicated while Mr. McKelvey remains on supervised release. Early termination would facilitate Mr. McKelvey's ability to travel with his family and young children without the limitations imposed by supervised release.

## II. Legal Standard

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by

incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Section 3583(e) gives the Court authority to terminate supervision at any time after the expiration of one year, if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e).[1] When determining whether to grant such an application, the Court is instructed to "consider 'the factors set forth in [18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting 18 U.S.C. § 3583(e)); *see also* United States District Court for the Southern District of New York Probation Office, *Early Termination from Supervision* (Aug. 2018) ("[§] 3583(e)(1) does not require 'exceptional conduct' to justify early termination. Instead, a court must simply be satisfied that the termination is warranted and is in the interest of justice.").

What is missing from that list is § 3553(a)(2)(A): the Court need not consider the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The Supreme Court confirmed the importance of that omission in *Esteras*: "District courts cannot consider § 3553(a)(2)(A) when revoking supervised release."[2] *Esteras v. United States*, 145 S. Ct. 2031, 2040 (2025). By its plain terms, § 3583(e)'s introductory sentence governs both proceedings to "revoke" supervision under § 3583(e)(3)—at issue in *Esteras*—and proceedings to "terminate" supervision under § 3583(e)(1)—at issue here. *See Esteras*, 145 S. Ct. at 2039 n.3 ("The same list of factors also applies when a district court modifies the terms of supervised release, such as by terminating supervised release early."). This comports with Supreme Court precedent holding that the omission of § 3553(a)(2)(A) from § 3583(e) prohibits district court consideration of retribution when *imposing* supervised release. *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("[A] court may not take account of retribution . . . when imposing a term of supervised release."). Thus, just as a court may not consider § 3553(a)(2)(A) when imposing or revoking supervised release, it also impermissible for a court to consider the "seriousness" of the underlying offense or the need to provide "just punishment" for that offense when deciding to terminate under § 3583(e)(1). In both kinds of proceedings, a court is prohibited from "account[ing] for the need to exact retribution for the defendant's underlying crime." *Esteras*, 145 S. Ct. at 2045.

This reference to the omission of retribution by the Supreme Court in *Esteras* duly aligns with the stance of the Sentencing Commission. It has noted that post-sentencing rehabilitative efforts "may provide a basis for early termination of supervised release under 18 U.S.C. § 3583(e)(1)." U.S.S.G. § 5K2.19.

Supervised release's rehabilitative purpose has been noted by many courts that have addressed the issue. The Supreme Court has indicated that, "[s]upervised release, in contrast to

---

[1] As the Court is likely aware, the United States Sentencing Commission has adopted amendments to the Sentencing Guidelines related to supervised release. Notably, it added a new policy statement at §5D1.4 (Modification, Early Termination, and Extension of Supervised Release (Policy Statement). This new policy statement encourages a court, as soon as practicable after a defendant's release from imprisonment, to conduct an individualized assessment to determine whether it is warranted to modify, reduce, or enlarge the conditions of supervised release. Additionally, any time after the expiration of one year of supervised release, it would encourage a court to terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and the interest of justice.

[2] *Esteras* rejected the Second Circuit's position on this question. *See Esteras*, 145 S. Ct. 2031, 2038 n.1 (2025).

probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The Court further elaborated that supervised release is meant "to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 60 (2000). The Court then used this rationale to hold that prison time and supervised release are not "interchangeable." *Id.* at 60. This sharp distinction between supervised release and incarceration illustrates the rehabilitative, and not punitive, purpose of supervised release.

The Second Circuit has also clearly established the rehabilitative purpose of supervised release:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, at 124 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3307…Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

*United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015). District courts in this circuit have noted that "[t]he purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *United States v. Trotter*, 321 F. Supp. 3d 337, 339 (E.D.N.Y. 2018). *Trotter* makes clear that "[s]upervised release is designed to assist with rehabilitation, not to punish" and notes that courts are directed by Congress, in most cases, "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id.* at 345. Those who no longer need the rehabilitative purposes of supervised release then qualify for early termination.

### III. The Interests of Justice and Mr. McKelvey's Conduct on Supervision Warrant Early Termination

Early termination is appropriate under this standard in Mr. McKelvey's case. Mr. McKelvey's conduct on supervised release has been exemplary, without any violations or police contact since he began his term in January 2023. He is gainfully employed performing important community work at Action Carting as evinced by his long and successful employment there. Mr. McKelvey has paid his assessment fee in full and has no outstanding debt to the Court. Officer Harris has confirmed that Mr. McKelvey has complied with all his conditions of supervised release and therefore supports Mr. McKelvey's request for early termination. Mr. McKelvey's conduct on supervised release "demonstrates that continued court supervision is unnecessary to achieve 'general punishment goals,' as well as the goals of promoting respect for the law, deterring criminal conduct by [Mr. McKelvey], and protecting the community from future harm by [him]." The resources of the Probation Department, which have been particularly taxed as of

4

late, would be better spent on an individual who needs supervision and can benefit from the services offered by Probation—not on Mr. McKelvey.

Early termination of supervised release is a mechanism that courts in this district have employed to terminate unnecessarily lengthy terms of supervised release for individuals who have accomplished the rehabilitative purposes that supervised release was intended to serve. *See, e.g.*, *United States v. Cruz*, 19 Cr. 770 (JMF) (S.D.N.Y. 2025) (granting early termination of supervised release); *United States v. Mangual*, 23 Cr. 429 (JGK) (S.D.N.Y. 2024) (same); *United States v. Grullon*, 23 Cr. 106 (PGG) (S.D.N.Y. 2023) (same); *United States v. Zavala*, 18 Cr. 735 (KPF) (S.D.N.Y. 2023) (same); *United States v. Enriquez*, 20 Cr. 455 (RA) (S.D.N.Y. 2023) (same); *United States v. Sam*, 16 Cr. 184 (JGK) (S.D.N.Y. 2018) (same); *United States v. Cummings*, 06 Cr. 481 (JGK) (S.D.N.Y. 2017) (same); *United States v. Bethea*, 05 Cr. 1234 (DC) (S.D.N.Y. 2015) (same); *see also United States v. Young*, 20 Cr. 201 (KMW) (S.D.N.Y. 2024) (terminating probation early). In granting early termination motions, courts in other districts have similarly recognized the psychological toll of supervision, acknowledging the "significance to defendants of 'being off the papers' and becoming one's own person without reporting requirements and without having to request permission to engage in travel or other activities. Thus, terminating supervision, i.e., 'the papers,' represents a form of freedom . . . ." *United States v. Roman et al.*, No. 3:06-cr-268-26 (JBA), Order Granting Defendant's Motion for Early Termination of Supervised Release (D. Conn. Jan. 4, 2023) at 2. Additionally, as Judge Dearie in the Eastern District noted, early termination of supervised release is important to "reward [a defendant's] determination to lead a responsible life and the success he has already realized" as it also "remind[s] others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, No. 92-cr-00091 (RJD), 2021 WL 535208, at *2 (E.D.N.Y. Feb. 12, 2021). Terminating Mr. McKelvey's supervision early would afford him the benefit of facilitating his employment and allow him to travel more easily with his family. Moreover, it would meaningfully send a message to other defendants on supervision: that early termination is possible with hard work and full compliance with the Court.

## IV.   Conclusion

Mr. McKelvey's performance on supervision, his stable employment, and his strong familial support make clear that he has successfully reintegrated into the community. Consistent with Probation's position, given the progress Mr. McKelvey has made in his community for over two years (and given the short term of supervision remaining), early termination of his supervised release is warranted and in the interest of justice.

Thank you for your time and attention to this matter.

Respectfully submitted,

*Marisa K. Cabrera*

Marisa K. Cabrera, Esq.
Assistant Federal Defender

5